# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

SCHAFER v KENT COUNTY
HATHON v STATE OF MICHIGAN

Docket No. 164975; argued March 13, 2024 (Calendar No. 1). Docket No. 165219; argued on application for leave to appeal March 13, 2024. Decided July 29, 2024.

In Docket No. 164975, Kent County foreclosed on Matthew Schafer's and Harry and Lilly Hucklebury's homes for unpaid taxes, and the Kent Circuit Court later entered a judgment of foreclosure. Kent County sold the properties at public auction in 2017, and in accordance with provisions of the General Property Tax Act (GPTA), MCL 211.1 *et seq*., that were in effect at the time of the auction, Kent County retained all proceeds from the sales, which included the proceeds exceeding what Shafer and the Huckleburys (collectively, the Schafer plaintiffs) owed for the unpaid taxes, penalties, and interest. On July 17, 2020, the Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429 (2020), that the government's retention of surplus proceeds following a foreclosure sale amounts to an unconstitutional taking under Article 10, § 2 of Michigan's 1963 Constitution. Relying on *Rafaeli*, on December 14, 2020, the Schafer plaintiffs filed this action in the Kent Circuit Court against Kent County and the Kent County Treasurer, asserting that under *Rafaeli*, Kent County's retention of the surplus proceeds violated the Takings Clauses of the Michigan and United States Constitutions and that the Schafer plaintiffs were entitled to the surplus proceeds. On December 22, 2020, the Legislature enacted 2020 PA 256, effective December 22, 2020, amending the GPTA in response to *Rafaeli* so as to provide a limited mechanism for aggrieved parties to obtain surplus proceeds from foreclosing governmental units (FGUs) after a tax-foreclosure sale. Relevant here, MCL 211.78t of the statute contains different provisions for claims arising out of foreclosed properties sold after July 17, 2020—the date *Rafaeli* was issued—and properties sold before July 18, 2020. Kent County thereafter moved for summary disposition, arguing that *Rafaeli* applied prospectively and that it did not apply to the sale of the Schafer plaintiffs' properties, which had been sold three years before the decision in *Rafaeli*. The Schafer plaintiffs opposed the motion, arguing that *Rafaeli* applied retroactively because it did not establish a new principle of law but instead returned to a constitutional mandate. The court, Paul J. Denenfeld, J., denied defendant's motion to dismiss, concluding that *Rafaeli* applied retroactively because the decision did not establish a new rule of law. Kent County sought leave to appeal the trial court's decision. The Court of Appeals granted the application, and the Court, MURRAY, P.J., and O'BRIEN and REDFORD, JJ., affirmed the trial court's order. 343 Mich App 462 (2022). In reaching that conclusion, the Court of Appeals determined that *Rafaeli* applied retroactively to the Schafer plaintiffs' claims because the holding was supported by long-

established constitutional principles and did not overrule caselaw. Kent County sought leave to appeal, and the Supreme Court granted the application. 511 Mich 988 (2023).

In Docket No. 165219, the state of Michigan, acting as the FGU for Shiawassee County, foreclosed on property owned by Lynette Hathon and Amy Jo Denkins (the Hathon plaintiffs) for unpaid taxes, and the Shiawassee Circuit Court later entered a judgment of foreclosure. The state sold the property at public auction in August 2018 and retained the surplus proceeds from the sale. On January 15, 2019, the Hathon plaintiffs filed in the Court of Claims a notice of intention to file a claim against the state regarding its retention of the surplus proceeds. Two weeks later, on January 29, 2019, the Hathon plaintiffs filed a putative class action (on behalf of themselves and other similarly situated individuals from the counties of Keweenaw, Luce, Iosco, Mecosta, Clinton, Shiawassee, Livingston, and Branch) in the Court of Claims against the state and a Department of Treasury employee, in her individual and official capacities, for deprivation of the surplus proceeds, asserting, among other things, a claim of unconstitutional takings under the federal and state Constitutions. The Court of Claims, MICHAEL J. KELLY, J., certified the case as a class action on June 7, 2019, and the state moved for summary disposition. On August 13, 2019, the Court of Claims denied the state's motion, concluding that the Hathon plaintiffs had stated a viable takings claim under both the federal and state Constitutions. After the Supreme Court issued the decision in *Rafaeli*, the Hathon plaintiffs moved for summary disposition, and the state moved for partial summary disposition and to revoke class certification. Before the Court of Claims issued its decision on the competing motions, the Legislature enacted 2020 PA 256. In December 2020, the Court of Claims granted the state's motion to revoke class certification; the order was later amended to state that the order was without prejudice. In the same original order, the Court of Claims (1) rejected the state's argument that *Rafaeli* applied prospectively only, (2) concluded that the one-year notice provision of MCL 600.6431(1) applied to the Hathon plaintiffs' constitutional and inverse-condemnation claims against the state and that the class's inverse-condemnation claims therefore had to be dismissed, (3) determined that the MCL 600.6452(1) three-year period of limitations applied to the Hathon plaintiffs' constitutional claims, and (4) rejected plaintiffs' argument that just compensation required the Hathon plaintiffs be awarded the fair market value of their properties. The Hathon plaintiffs subsequently moved to recertify an amended class, which the Court of Claims granted. The court determined that MCL 211.78t, as enacted by 2020 PA 256, did not apply retroactively to claims filed before its enactment in December 2020, so the statute did not apply to the Hathon plaintiffs' claims. The Court of Claims concluded that factors considered under MCR 3.501(A)(1) in granting a class certification supported class proceedings, and the court certified the class as including all individuals who had their surplus proceeds taken without compensation in the eight counties where the state was the FGU. Because of the notice-of-intent statute for claims filed against the state, MCL 600.6431(1), the class reached back to all claims accruing one year prior to the Hathon plaintiffs' notice of intent, or January 15, 2018, and continued until the eventual date of the court's final order. The state appealed, and the Hathon plaintiffs cross-appealed. The Court of Appeals, BOONSTRA, P.J., and GADOLA and HOOD, JJ., affirmed the Court of Claims in full, concluding that MCL 211.78t, as enacted by 2020 PA 256, did not apply retroactively to bar takings claims filed before the statute was enacted. 344 Mich App 387 (2022). In addition, the Court of Appeals held that the Court of Claims did not abuse its discretion by certifying the amended class of plaintiffs. The state sought leave to appeal, and the Supreme Court ordered oral argument on the application. 511 Mich 988 (2023). The Supreme

Court directed the Clerk to schedule oral argument in *Hathon* for when it would hear oral argument in *Schafer*.

In an opinion by Justice ZAHRA, joined by Chief Justice CLEMENT and Justices VIVIANO (except as to Part III(A)), BERNSTEIN, CAVANAGH, WELCH, and BOLDEN, the Supreme Court *held*:

Under *Rafaeli*, the government's retention of surplus proceeds following a foreclosure sale amounts to an unconstitutional taking under the United States and Michigan Constitutions. In 2020 PA 256, the Legislature amended the GPTA to address this holding. *Rafaeli* applies retroactively to claims not yet final on July 17, 2020, the date the opinion was issued. MCL 211.78t, which provides a procedure for processing claims made under *Rafaeli*, applies retroactively to claims arising before the provision was enacted on December 22, 2020. The new two-year limitations period in MCL 211.78*l* applies prospectively to claims that arose from tax-foreclosure sales that occurred after December 22, 2020 (the effective date of 2020 PA 256). Claims that arose before December 22, 2020 (the date 2020 PA 256 was enacted) but expired between the date of enactment and the date of today's decision must be allowed to proceed if filed within a reasonable time of this opinion being issued, while still respecting the applicable statutes of limitations. To be filed within a reasonable time, those claims must be filed within the balance of time remaining under the applicable statutes of limitations as of December 22, 2020, running from the date of this opinion. In *Schafer*, the Court of Appeals correctly affirmed the trial court order that denied defendants' motion to dismiss on the basis that *Rafaeli* applied retroactively, and the case was remanded for further proceedings. In *Hathon*, the Court of Appeals judgment that affirmed recertification of the Hathon plaintiffs' class was vacated; Parts III(A) and (B) of the Court of Appeals opinion were also vacated; and the case was remanded to the Court of Claims to reconsider the Hathon plaintiffs' motion to recertify the class.

1. The Michigan Supreme Court has previously applied the federal standard established in *Chevron Oil Co v Huson*, 404 US 97 (1971) (civil context), and *Linkletter v Walker* (criminal context), for determining when a court case should be applied retroactively. Under that federal standard, three factors are considered when determining whether a judicial decision is applied retroactively or prospectively: (1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice. Michigan's retroactivity test, which is drawn from *Chevron Oil* and *Linkletter*, has created confusion in Michigan law. While the United States Supreme Court has interpreted the *Chevron Oil* case as establishing the standard for prospective relief only, the Court in *Linkletter* did not apply its retroactive/prospective analysis to pending or newly filed cases. Instead, *Linkletter* considered whether a new decision would apply to final criminal cases on collateral review. Michigan, in turn, has typically applied a case retroactively to: (1) the case before the court, (2) all cases that could have and did raise the issue that are pending at the time of the decision, and (3) all cases timely filed after the decision. Although Michigan courts have referred to this standard as "limited retroactivity," the Michigan standard is analogous to "full retroactivity" as developed under federal caselaw since *Chevron Oil* and *Linkletter*. Under this standard, then, a judicial decision does not apply to cases in which the parties have been given an opportunity to litigate the issue in prior proceedings or to cases that are already final. In contrast, judicial decisions given prospective effect apply to cases arising from facts occurring after the relevant decision, with the possible exception of the parties involved in the rulemaking decision itself. Prospective

application of judicial decisions is disfavored and is reserved primarily for situations in which the Michigan Supreme Court overturns clearly established caselaw. In contrast, the general rule is that judicial decisions are to be given full retroactive effect.

2. The GPTA, as amended by 1999 PA 123, established procedures that allowed legal title of properties to transfer to FGUs following tax-foreclosure sales and allowed the FGUs to retain the surplus proceeds from the sales. *Rafaeli* issued a holding on constitutional takings that is applicable to all individuals who were denied surplus proceeds that remain after their property has been seized and sold as a result of tax foreclosure. Specifically, *Rafaeli* held, in line with centuries of jurisprudence, that the Takings Clause of Michigan's 1963 Constitution prohibits a governmental unit from taking private property without just compensation, that no subsequent amendment of the GPTA can abrogate this basic right, and that this right prohibits FGUs from retaining surplus proceeds following a tax-foreclosure sale; thus, the 1999 provisions of the GPTA deprived individuals of their constitutional right to just compensation from government taking of private property. In *Tyler v Hennepin Co, Minnesota*, 598 US 631 (2023), the United States Supreme Court recognized that the federal Constitution similarly prohibits governmental units from keeping surplus proceeds after a tax-foreclosure sale without providing the divested property owners with an opportunity to claim those proceeds. In reaching these conclusions, *Rafaeli* and *Tyler* did not overturn any caselaw, legal principles, or precedents. Indeed, the retention of surplus proceeds was already unconstitutional, independent of *Rafaeli* and *Tyler*, under both United States Supreme Court precedent and longstanding legal jurisprudence that individuals have a right to surplus proceeds because governments cannot take property without just compensation. In addition, as the *Rafaeli* Court correctly recognized, the property right to surplus proceeds dates back to the Magna Carta, through the English common-law tradition, through Michigan's early statehood, and into twentieth century Michigan and American jurisprudence; the United States Supreme Court came to this same conclusion in the context of a Minnesota statute in *Tyler*. While the Legislature created this problem when it enacted 1999 PA 123, and the FGUs relied on the provisions by retaining surplus proceeds in accordance with that law, *Rafaeli* cannot, in light of these principles, be applied prospectively. Prospective application would place the costs of the unconstitutional conduct on the individuals whose rights were violated. There is no reason to decline applying *Rafaeli* to cases that are not yet final or to timely filed claims based on events that occurred before the Court's decision. Therefore, *Rafaeli* applies retroactively to claims not yet final on July 17, 2020, the date the opinion was issued. Accordingly, in *Schafer*, the Court of Appeals correctly affirmed the trial court order that denied defendant's motion to dismiss, and the case was remanded for further proceedings.

3. While statutes and statutory amendments are presumed to operate prospectively, the Legislature can require a statute to apply retroactively if the language is unambiguous in terms and context. However, statutes of limitations have long been presumed to apply prospectively absent clear and unequivocal manifestation of a legislative preference for retroactive application. Further, statutes cannot constitutionally eliminate relief by retroactively shortening a limitations period without also providing a reasonable period of time for claimants to commence litigation. MCL 211.78t, as enacted by 2020 PA 256, provides that a claimant whose foreclosed property transferred or sold before July 18, 2020—the day after *Rafaeli* was issued—may seek surplus proceeds *only if* the Michigan Supreme Court orders that its decision in *Rafaeli* applies retroactively. If that condition is satisfied, the provision establishes the exclusive process and

mechanism by which claimants may seek to recover surplus proceeds. All sales of property that occurred before the date *Rafaeli* was issued occurred *definitionally* before the statute was enacted; therefore, MCL 211.78t unambiguously applies to events and occurrences in the past. With regard to limitations periods, before 2020 PA 256 was enacted and amended the GPTA, the statute of limitations to seek surplus proceeds as an unconstitutional taking was six years against county governments, MCL 600.5813, and three years against the state, MCL 600.6452, with an additional one-year notice-of-intent requirement for claims against the state, MCL 600.6431. MCL 211.78*l*, as amended by 2020 PA 256, now provides that claims for surplus proceeds may not be brought more than two years after a judgment of foreclosure. In contrast with MCL 211.78t, MCL 211.78*l* does not contain language expressly stating that the new limitations period applies to action and events before 2020 PA 256 was enacted on December 22, 2020. The new limitations period therefore applies prospectively; to hold otherwise would cut off the rights of individuals whose claims accrued prior to the creation of the shortened limitations period. Accordingly, MCL 211.78t applies retroactively while MCL 211.78*l* applies prospectively. However, MCL 211.78t cannot work together with statutes of limitations applicable to claims accruing before 2020 PA 256 was enacted to retroactively cut off relief for claims that expired between the date of the enactment of MCL 211.78t on December 22, 2020, and the date of this Court's decision in *Schafer*. Therefore, courts must provide individuals whose claims were cut short by operation of MCL 211.78t a reasonable time by which they may file their claims after the Court's decision in *Schafer*, respecting the established limitations period existing at the time the claims accrued. In this way, claimants whose claims were cut short by the retroactive application of 2020 PA 256 will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under the applicable statutes of limitations as of December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion. Because (1) *Rafaeli* applies retroactively to claims not yet final at the time it was issued, (2) MCL 211.78t applies retroactively, and (3) the MCL 211.78*l* limitations period applies prospectively and thus only to claims accruing after the enactment of 2020 PA 256, the Court of Appeals judgment affirming recertification of the Hathon plaintiffs' class was vacated, as well as Parts III(A) and (B) of the Court of Appeals' opinion. The case was remanded to the Court of Claims to reconsider, in light of these conclusions, the Hathon plaintiffs' motion to recertify the class.

In Docket No. 164975, Court of Appeals judgment affirmed; case remanded to the trial court for further proceedings. In Docket No. 165219, Court of Appeals judgment affirming recertification of the Hathon plaintiffs' class and Parts III(A) an (B) of the Court of Appeals opinion vacated; case remanded to the Court of Claims for further proceedings.

Justice ZAHRA, concurring, wrote separately to express that the Legislature's enactment of 2020 PA 256 after *Rafaeli* was decided was alarming and unusual because it conditioned access to relief under the statute on the Supreme Court taking a case on appeal and holding that *Rafaeli* applied retroactively. Had the Court not granted the Schafer plaintiffs' application, individuals around the state may have been denied a remedy for unconstitutional takings. At a minimum, by tying relief for a certain class of claimants to discretionary action by the Court, the Legislature risked serious uncertainty, disruption, and limited public resources in adjudicating constitutional claims. In sum, Justice ZAHRA expressed his belief that there are serious constitutional concerns about the Legislature using such a tactic.

Justice VIVIANO, concurring, joined the majority opinion except for those portions of Part III(A) that discuss and rely on the historical analysis of claims for surplus proceeds from *Rafaeli*. As expressed in Justice VIVIANO's concurring opinion in *Rafaeli*, neither the Magna Carta nor the earlier Michigan caselaw relied on by the majority in *Rafaeli* clearly indicated that surplus proceeds must be returned to a previous property owner after foreclosure. Instead, for tax-foreclosure takings claims involving real property, the better view is that the property taken is the taxpayer's equity, which occurs when title vests in the government with no opportunity for redemption. Since *Rafaeli* was decided, federal court decisions have left uncertainty as to the correct property rights at issue. While it is clear after the United States Supreme Court's decision in *Tyler* that an FGU may not retain surplus proceeds after a tax-foreclosure sale, that decision did not clearly explain the basis for the property right at issue; did not explain how the amount of surplus proceeds to be returned to the taxpayer must be calculated; and did not explain what a taxpayer is entitled to (if anything) if there is no public sale and the FGU either retains or purchases the property, resulting in no surplus proceeds. Regardless of his criticism of the majority's analysis in *Rafaeli*, Justice VIVIANO agreed with the majority in *Schafer* that *Rafaeli* applies retroactively because *Rafaeli* was not a new rule of law, *Rafaeli* did not depart from clear precedent, and, as he explained in his concurrence in that case, the result flowed from the application of fundamental constitutional principles and the law of property.

# OPINION

Chief Justice:          Justices:
Elizabeth T. Clement    Brian K. Zahra
                        David F. Viviano
                        Richard H. Bernstein
                        Megan K. Cavanagh
                        Elizabeth M. Welch
                        Kyra H. Bolden

FILED July 29, 2024

STATE OF MICHIGAN

SUPREME COURT

MATTHEW SCHAFER, HARRY
HUCKLEBURY, and LILLY
HUCKLEBURY,

        Plaintiffs-Appellees,

v                               No. 164975

KENT COUNTY,

        Defendant-Appellant,

and

KENT COUNTY TREASURER,

        Defendant.

---

LYNETTE HATHON and AMY JO
DENKINS, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs-Appellees,

v                               No. 165219

STATE OF MICHIGAN,

               Defendant-Appellant.

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In *Rafaeli, LLC v Oakland Co*,[1] this Court unanimously held that the then-applicable provisions of Michigan's General Property Tax Act (GPTA)[2] violated the Takings Clause of the Michigan Constitution[3] to the extent they permitted units of government to retain surplus proceeds[4] obtained in tax-foreclosure proceedings.[5]  In December 2020, less than five months after we issued our opinion in *Rafaeli*, the Michigan Legislature enacted 2020 PA 256 to amend the GPTA.  The amendments established a process for the administration

---

[1] *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020).

[2] MCL 211.1 *et seq*.

[3] Const 1963, art 10, § 2.

[4] Surplus proceeds are those revenues from a tax-foreclosure sale that "exceed the amount [the property owner] owed in unpaid delinquent taxes, interest, penalties, [and] fees . . . ." *Rafaeli*, 505 Mich at 437.

[5] Specifically, we held that retention of "surplus proceeds from . . . tax-foreclosure sale[s] . . . that exceed the amount plaintiffs owed in unpaid delinquent taxes, interest, penalties, and fees" results in an "unconstitutional taking without just compensation under Article 10, § 2" of the Michigan Constitution.  *Rafaeli*, 505 Mich at 437.  As a result, just compensation is required to be paid by foreclosing governmental units that pursued the tax-foreclosure sales by returning to property owners their surplus proceeds, "no more, no less."  *Id*. at 484.  However, we also noted that "[n]othing in our holding today prevents the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover the surplus proceeds."  *Id*. at 473 n 108.

of claims against foreclosing governmental units (FGUs)[6] and established a statutory limitations period requiring that such claims must be brought within "2 years after the judgment of foreclosure . . . ."[7] They also provided that claims for surplus proceeds from foreclosure sales that occurred before *Rafaeli* could not be maintained unless this Court held *Rafaeli* to be retroactive.[8] Before the Court are two cases in which plaintiffs seek recovery of surplus proceeds that plaintiffs allege were wrongfully retained by the FGUs under *Rafaeli*.

In Docket No. 164975, defendant Kent County appeals the decision of the Court of Appeals to affirm the Kent Circuit Court, which denied Kent County's motion for summary disposition against plaintiffs Matthew Schafer and Lilly Hucklebury (collectively, the Schafer plaintiffs). In Docket No. 165219, defendant state of Michigan appeals the Court of Appeals' judgment affirming the Court of Claims, which granted plaintiffs Lynette Hathon and Amy Jo Denkins' (collectively, the Hathon plaintiffs) motion for class certification. Kent County argues in *Schafer* that this Court's decision in *Rafaeli* does not apply retroactively. The state argues in *Hathon* that the relevant claims are governed through retroactive application of 2020 PA 256, which was enacted with immediate effect on December 22, 2020, to administer certain takings claims filed under *Rafaeli*.

We hold as follows:

---

[6] MCL 211.78t, enacted by 2020 PA 256.

[7] MCL 211.78*l*, enacted by 2020 PA 256.

[8] MCL 211.78t(1)(b)(*i*), as enacted by 2020 PA 256 (stating that claims arising prior to the date of *Rafaeli* being issued "may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively").

3

1. *Rafaeli* applies retroactively to claims not yet final on July 17, 2020, the date the opinion was issued.

2. MCL 211.78t, which establishes a procedure for processing claims made under *Rafaeli*, applies retroactively to claims arising prior to its enactment.

3. The new limitations period in MCL 211.78*l* applies prospectively only to claims arising from tax-foreclosure sales that occurred after December 22, 2020 (the effective date of 2020 PA 256).

4. In order to be treated as constitutional, MCL 211.78t, in conjunction with applicable statutes of limitations,[9] cannot apply retroactively to cut off claims for relief. Therefore, if filed within a "reasonable time" of today's decision, claims that arose before December 22, 2020, the date of 2020 PA 256's enactment, but expired between the date of enactment and the date of today's decision must be allowed to proceed, while still respecting the applicable statutes of limitations. Specifically, a claimant seeking surplus proceeds may pursue a claim if filed within the balance of time remaining under the applicable statutes of limitations as of December 22, 2020, running from the date of this opinion.

Consequently, in *Schafer*, the Court of Appeals decision to affirm denial of Kent County's summary disposition motion is affirmed, and the case is remanded for further proceedings. In *Hathon*, the decision of the Court of Appeals to affirm recertification of plaintiffs' class, as well as Parts III(A) and (B) of the Court of Appeals opinion, are vacated.

---

[9] MCL 600.5813 (six-year limitations period for unspecified personal actions); MCL 600.6452 (three-year limitations period for claims against the state).

4

We remand *Hathon* to the Court of Claims for reconsideration of plaintiffs' motion for recertification in light of this Court's decisions.

## I. FACTS AND PROCEDURAL HISTORY

### A. *SCHAFER*

Plaintiffs Schafer and Hucklebury[10] had their homes foreclosed in Kent County in 2017. Kent County initiated the foreclosures, seeking recovery of delinquent tax assessments, interest, penalties, fees, and costs. Schafer had a total delinquency of $5,300, and his home sold at auction for $51,500. Hucklebury amassed a $6,000 liability, and her home was sold at auction for $33,000. According to plaintiffs' complaint, Kent County satisfied the delinquent debt owed by plaintiffs but also retained the surplus proceeds that remained after plaintiffs' debts were extinguished.

On December 14, 2020, plaintiffs filed claims in the Kent Circuit Court under the Takings Clauses of the Michigan and United States Constitutions,[11] seeking to obtain compensation for the surplus proceeds taken by Kent County in the tax-foreclosure proceedings.[12] Plaintiffs also requested class certification for similarly situated individuals in Kent County.

---

[10] After the Court of Appeals decision, the third named plaintiff, Harry Hucklebury, passed away. He was the husband of Lilly Hucklebury, who proceeds with the claim in this action.

[11] US Const Am V; Const 1963, art 10, § 2.

[12] The federal claim was brought under 42 USC 1983. In full, plaintiffs brought claims under the following theories: the Takings Clauses of the Michigan and United States Constitutions, conversion, substantive due process and § 1983, procedural due process and § 1983, unjust enrichment, statutory conversion, the Eighth Amendment and § 1983, constructive trust, and declaratory relief.

On December 22, 2020, the Legislature passed with immediate effect 2020 PA 256. Of special significance, the act added MCL 211.78t, which established a structured and "exclusive" process for individuals subject to tax-foreclosure proceedings to seek and obtain surplus proceeds from FGUs.[13] MCL 211.78t(1)(b)(*i*) also barred any claims for surplus proceeds for properties foreclosed prior to the July 2020 *Rafaeli* decision unless and until the Michigan Supreme Court holds that *Rafaeli* applies retroactively.[14] In addition, 2020 PA 256 amended MCL 211.78*l* to establish a new statute of limitations for claims brought to obtain surplus proceeds.[15] Under the amended MCL 211.78*l*, such claims must be brought within "2 years after the judgment of foreclosure . . . ."

---

[13] MCL 211.78t(11), (1).

[14] MCL 211.78t(1)(b)(*i*) (stating that claims arising prior to the date of *Rafaeli* being issued "may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively").

[15] MCL 211.78*l*(1) states in relevant part:

> If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a property are extinguished as provided in [MCL 211.78k], the owner of any extinguished recorded or unrecorded interest in that property shall not bring an action, including an action for possession or recovery of the property or any interests in the property or of any proceeds from the sale or transfer of the property under this act, or other violation of this act or other law of this state, the state constitution of 1963, or the Constitution of the United States more than 2 years after the judgment of foreclosure of the property is effective under [MCL 211.78k]. Nothing in this section authorizes an action not otherwise authorized under the laws of this state. An action to recover any proceeds from the sale or transfer of property foreclosed for nonpayment of real property taxes under this act must be brought as provided under section [MCL 211.78t].

6

In February 2021, Kent County moved for summary disposition under MCR 2.116(C)(8) for failure to state a claim. In so doing, Kent County argued that *Rafaeli* did not apply retroactively and that plaintiffs therefore were not entitled to relief under the Michigan Constitution. The trial court denied Kent County's motion as to the takings claim under the Michigan Constitution.[16]

Kent County sought leave to appeal the trial court's decision. The Court of Appeals granted the application and affirmed the trial court.[17] According to the Court of Appeals, the holding in *Rafaeli* was supported by long-established constitutional principles and did not overrule caselaw. Therefore, *Rafaeli* applied retroactively to plaintiffs' claims.[18] Kent County sought leave to appeal in this Court, and we granted the application.[19]

## B. *HATHON*

Plaintiffs Lynette Hathon and Amy Jo Denkins jointly owned real estate in Owosso, Michigan. Like the *Schafer* plaintiffs, their property was foreclosed due to nonpayment of property taxes by Shiawassee County on February 9, 2018. However, unlike in *Schafer*, the county did not perform the foreclosure as the FGU. Instead, pursuant to a statutory process established under MCL 211.78(3), Shiawassee County elected to have the state of

---

[16] In addition, the trial court held that plaintiffs' claims under the United States Constitution survived. The federal claims continue to proceed before the trial court.

[17] *Schafer v Kent Co*, 343 Mich App 462; 997 NW2d 290 (2022).

[18] *Id*. at 470-472.

[19] *Schafer v Kent Co*, 511 Mich 988 (2023).

Michigan serve as the FGU for tax foreclosures made within the county.[20] Plaintiffs' total delinquency, including assessments, interests, fees, penalties, and costs, was around $5,000. However, the state sold the property at auction for $28,250 and retained the surplus proceeds.

On January 15, 2019, plaintiffs filed a notice of intent to sue the state under MCL 600.6431(1) in the Court of Claims, and on January 29, 2019, plaintiffs filed their complaints, asserting claims under the Takings Clauses of the Michigan and United States Constitutions.[21] Plaintiffs also sought class certification for all similarly situated individuals whose surplus proceeds were taken without just compensation and where the state operated as the FGU.

The Court of Claims granted plaintiffs' motion for class certification. In September and October 2020, after our *Rafaeli* opinion was released, the parties filed cross motions for summary disposition on various grounds, and defendant, the state of Michigan, moved to decertify the class. The Court of Claims granted in part and denied in part the motions for summary disposition and granted without prejudice the state's motion to decertify the class.

On December 22, 2020, the same day the Legislature passed with immediate effect 2020 PA 256, plaintiffs moved to recertify the class. The Court of Claims received briefing

---

[20] At the time of the alleged takings in the *Hathon* case, a total of eight Michigan counties elected to have the State perform tax foreclosures as the FGU, including Keweenaw, Luce, Iosco, Mecosta, Clinton, Shiawassee, Livingston, and Branch Counties.

[21] Like plaintiffs in *Schafer*, the federal claim was brought in part under § 1983. In full, the *Hathon* plaintiffs asserted the following claims: Takings Clause under the Michigan and United States Constitutions and § 1983, the Eighth Amendment and § 1983, and the Excessive Fines Clause of the Michigan Constitution.

from the parties on the impact of 2020 PA 256 and specifically MCL 211.78t, which barred any claims for surplus proceeds for properties foreclosed prior to *Rafaeli* from continuing unless and until the Michigan Supreme Court holds that *Rafaeli* applies retroactively.[22] In addition, the statute provided that a claimant must exclusively file in "the circuit court in the same proceeding in which a judgment of foreclosure was effective"[23]—not in the Court of Claims as a class action.

The Court of Claims granted the motion for recertification. It held as a matter of law that MCL 211.78t itself did not apply retroactively to claims filed prior to its enactment in December 2020. Further, the Court of Claims concluded that factors considered under MCR 3.501(A)(1) in granting a class certification supported class proceedings in this case. A class was certified for all individuals who had their surplus proceeds taken without compensation in the eight counties where the state was the FGU.[24] Because MCL 600.6431(1) requires a claimant to provide notice to the state within 1 year after a claim against the state accrues, the Court determined that the class included all claims accruing

---

[22] MCL 211.78t(1)(b) and (11).

[23] MCL 211.78t(6).

[24] The class was defined as follows:

> All persons and entities who, from January 15, 2018, through the final order in this matter, had real property in the counties of Keweenaw, Luce, Iosco, Mecosta, Clinton, Shiawassee, Livingston, and Branch that was foreclosed upon by the State of Michigan under the General Property Tax Act, MCL 211.78, which was then subsequently sold at tax auction for an amount exceeding the minimum bid and who were not refunded the excess/surplus equity as described by the Michigan Supreme Court in *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020).

9

one year prior to the plaintiffs' notice of intent, or January 15, 2018, and continued until the eventual date of the court's final order.

The parties filed cross appeals from the Court of Claims class certification order.[25] The Court of Appeals affirmed the Court of Claims in full. In reaching that decision, the Court of Appeals relied on *Proctor v Saginaw Co Bd of Comm'rs*,[26] which held that MCL 211.78t, as enacted by 2020 PA 256, did not apply retroactively to bar takings claims filed prior to the enactment of the statute.[27] In addition, the Court of Appeals held that the Court of Claims did not abuse its discretion in weighing factors under MCR 3.501(A)(1) and granting class certification.[28] The state sought leave to appeal in this Court, and we ordered oral argument on the application.[29]

## II. STANDARD OF REVIEW

In *Schafer*, the Court is asked to review a motion for summary disposition filed under MCR 2.116(C)(8). A trial court's decision on a motion for summary disposition is

---

[25] In their cross-appeal, the Hathon plaintiffs asserted that the Court of Claims erred by concluding that the notice provisions of MCL 600.6431(1) applied to the class's inverse-condemnation claims. The Court of Appeals rejected that argument in a consolidated appeal, and the Hathon plaintiffs have not appealed that decision in this Court. See *Breiner v Michigan*, 344 Mich App 387, 415-417; 1 NW3d 336 (2022).

[26] *Proctor v Saginaw Co Bd of Comm'rs*, 340 Mich App 1; 985 NW2d 193 (2022) (emphasis omitted).

[27] *Breiner*, 344 Mich App at 408-411.

[28] *Id*. at 411-415.

[29] *Hathon v Michigan*, 511 Mich 988 (2023).

reviewed de novo.[30]  "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint."[31]  "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant."[32]  Summary disposition is appropriate under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted."  Questions of constitutional law are reviewed de novo.[33]

In *Hathon*, this Court must review a motion for class certification.  Generally, motions for class certification are governed by MCR 3.501 and are reviewed on appeal for an abuse of discretion.[34]  Factual findings made in the course of certifying a class are reviewed for clear error.[35]

Determinations of class certification often are "enmeshed" and overlap with the underlying factual and legal merits.[36]  However, motions for class certification are not an

---

[30] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[31] *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019) (emphasis omitted).

[32] *Maiden*, 461 Mich at 119.

[33] *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014).

[34] *Henry v Dow Chem Co*, 484 Mich 483, 496; 772 NW2d 301 (2009).  An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes.  *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

[35] *Henry*, 484 Mich at 496.  A factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made by the trial court. *Id*. at 495 n 18 (quotation marks and citation omitted).

[36] See *Wal-Mart Stores, Inc v Dukes*, 564 US 338, 351; 131 S Ct 2541; 180 L Ed 2d 374 (2011) (quotation marks and citations omitted); *Mich Ass'n of Chiropractors v Blue Cross*

11

opportunity for a party or the court to resolve the merits of the underlying claims.[37]

Nonetheless, in this case, the parties below fully briefed and analyzed the discrete legal issues of the retroactivity of 2020 PA 256's provisions. Both the Court of Claims and the Court of Appeals provided direct legal analysis on the applicability of 2020 PA 256, and this Court ordered briefing specifically on the legal issue of retroactivity arising from the act.[38] In this unique circumstance, where the Court has directed and the parties have provided analysis on an identifiable legal issue at multiple stages of the court system, the Court will review de novo the retroactivity of 2020 PA 256's provisions because this essentially is a question of statutory interpretation that is material to whether a class action can proceed.[39]

Questions of statutory interpretation are reviewed under long-established principles:

The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and

---

*Blue Shield of Mich*, 300 Mich App 551, 559-561; 834 NW2d 148 (2013) (describing the standard under the Michigan law in detail).

[37] *Henry*, 484 Mich at 504 ("Certifying courts must be mindful that, when it is necessary to look beyond a party's assertions to determine whether class certification is proper, the courts shall analyze any asserted facts, claims, defenses, and relevant law without questioning the actual merits of the case.").

[38] See *Hathon*, 511 Mich at 988 (directing the parties to address "whether 2020 PA 256 controls the plaintiff's claims and deprives the Court of Claims of jurisdiction to certify a class action under a takings theory").

[39] *Johnson v Pastoriza*, 491 Mich 417, 428-429; 818 NW2d 279 (2012).

12

ordinary meaning, the words of a statute provide the most reliable evidence of its intent.[40]

## III.  ANALYSIS

### A.  *SCHAFER*

Kent County argues that our decision in *Rafaeli* as to the Takings Clause under Michigan's Constitution does not apply retroactively, and specifically does not apply retroactively to the claims at issue here.  We disagree.

### 1.  RETROACTIVE AND PROSPECTIVE APPLICATION OF JUDICIAL DECISIONS

There exists considerable confusion in our caselaw surrounding the retroactivity of court decisions.  This is derived in no small part from the confusion in then-existing federal law, which Michigan adopted decades ago as its standard to resolve questions of retroactivity of judicial decisions.

To determine whether a judicial decision applies retroactively or prospectively, the Michigan Supreme Court has in the past expressly relied upon the federal law standard, as it existed under *Chevron Oil Co v Huson*[41], in the civil context, and *Linkletter v Walker,*[42] in the criminal context.[43]  These decisions provide us with three factors to be considered

---

[40] *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks and brackets omitted), quoting *Krohn v Home-Owners Ins Co*, 490 Mich 145, 156-157; 802 NW2d 281 (2011).

[41] *Chevron Oil Co v Huson*, 404 US 97, 106-107; 92 SCt 349; 30 L Ed 2d 296 (1971).

[42] *Linkletter v Walker*, 381 US 618, 629; 85 S Ct 1731; 14 L Ed 2d 601 (1965).

[43] See *Mich Ed Employees Mut Ins Co v Morris*, 460 Mich 180, 190; 596 NW2d 142 (1999) ("This Court has . . . applied the three-part test in *Chevron* and *Linkletter* . . . ."); accord *Pohutski v City of Allen Park*, 465 Mich 675, 696; 641 NW2d 219 (2002).  This opinion does not alter the established principles for retroactive application of decisions to criminal

when determining whether a judicial decision is applied retroactively or prospectively: "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice."[44] However, the *Chevron Oil* and *Linkletter* decisions became prone to considerable confusion.

In *Chevron Oil*, the Supreme Court of the United States considered the retroactivity of a judicial decision that mandated the application of a more restrictive statute of limitations, which would have effectively barred the plaintiff's civil claims.[45] The Supreme Court discussed the applicability of its judicial holding to "*actions filed before the date of [a decision's] announcement*," including the plaintiff at issue in the case, and held that in the interests of justice, the holding must be applied prospectively.[46] But, in setting the basic standard for prospective application, the focus on when "actions" are "filed" cannot be the rule. If, as *Chevron Oil* held, it is fundamentally unfair and undermines the effective administration of law to apply a case to litigants who did not know of the law previously and had a case pending (including the parties at issue themselves), the same must be true to those who have not yet filed their case but previously acted under the assumption the old law is in place (i.e., the facts of the case arose prior to the decision). When the nature, effect, and principles underlying the decision do not support retroactive application, a plaintiff who had legal rights eliminated in a judicial decision arising from

___

cases on collateral review. See note 60 of this opinion (discussing retroactive application of criminal decisions).

[44] *Morris*, 460 Mich at 190 (quotation marks and citation omitted).

[45] *Chevron Oil*, 404 US at 98-99.

[46] *Id*. at 100 (emphasis added).

14

events occurring prior to the decision has no less interest in those rights whether a claim was filed prior to or after the decision.

Despite language in the *Chevron Oil* decision, the United States Supreme Court has clarified that the holding in *Chevron Oil* established the standard for *full* prospective effect, i.e., "a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to *conduct or events* occurring before that decision," rather than when the *action* was *filed*.[47]

In the criminal context, *Linkletter* considered the retroactivity of *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961)—which incorporated the exclusionary rule of the Fourth Amendment applicable to the states—in *collateral habeas corpus proceedings*. *Linkletter* did not apply its retroactive/prospective analysis to pending or newly filed cases. The Supreme Court of the United States was concerned with *Mapp* being applied to "overturn all final convictions," i.e., making the decision retroactive on collateral review, which is neither applicable to this case nor to the legal dispute at issue.[48]

---

[47] *James B Beam Distilling Co v Georgia*, 501 US 529, 536; 111 S Ct 2439; 115 L Ed 2d 481 (1991) (opinion by Souter, J) (emphasis added); *id*. at 548 (Scalia, J, concurring in the judgment) (agreeing with the framing); see also *Reynoldsville Casket Co v Hyde*, 514 US 749, 752; 115 S Ct 1745; 131 L Ed 2d 820 (1995) (explaining that *Chevron Oil* established a "prospective only" application, comparing that to "retroactive" application to cases involving "predecision events"); *Harper v Virginia Dep't of Taxation*, 509 US 86, 97; 113 S Ct 2510; 125 L Ed 2d 74 (1993) (contrasting the holding in *Chevron Oil* to application in "all events, regardless of whether such events predate or postdate our announcement of the rule").

[48] *Linkletter*, 381 US at 639-640. See *Rose v Rose*, 289 Mich App 45, 58; 795 NW2d 611 (2010) (citing the "[w]ell-settled policy considerations favoring finality of judgments"); *Pierson Sand & Gravel, Inc v Keeler Brass Co*, 460 Mich 372, 380; 596 NW2d 153 (1999) (" 'The doctrine of res judicata was judicially created in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." ' ") (citations omitted); see

15

Not surprisingly, our retroactivity test drawn from *Chevron Oil* and *Linkletter* also produced confusion in Michigan law. A primary case cited for the "usual" standard of retroactivity in Michigan is *Stein v Southeastern Mich Family Planning Project, Inc*,[49] which discussed the retroactive application used in *Hyde v Univ of Michigan Bd of Regents*.[50] Notably, *Stein* involved the application of a newly available *affirmative defense* of governmental immunity.[51] However, *Stein* recognized that the "new" caselaw, which made governmental immunity available as a defense to a new class of defendants, applied to "pending cases where the issue has been raised and preserved" as well as to "cases commenced after the . . . decision . . . ."[52] Therefore, *Stein* applied the new law to cases

---

also *Teague v Lane*, 489 US 288, 309; 109 S Ct 1060; 103 L Ed 2d 334 (1989) (plurality opinion by O'Connor, J.) (explaining that the principles of finality are "essential to the operation of our criminal justice system," but that their application in criminal proceedings do not have "as much" place as in civil proceedings) (emphasis removed).

[49] *Stein v Southeastern Mich Family Planning Project, Inc*, 432 Mich 198; 438 NW2d 76 (1989); see *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 586-587; 702 NW2d 539 (2005) (adopting the "usual" form of retroactivity announced in *Stein*), citing *Wayne Co v Hathcock*, 471 Mich 445, 484; 684 NW2d 765 (2004).

[50] *Hyde v Univ of Michigan Bd of Regents*, 426 Mich 223; 393 NW2d 847 (1986). *Hyde* itself analyzed the retroactive application of *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), which impliedly overruled on other grounds *Parker v Highland Park*, 404 Mich 183; 273 NW2d 413 (1978).

[51] *Stein*, 432 Mich at 201, 203; see also *Devillers*, 473 Mich at 587 (concerning application to the no-fault, one-year-back rule defense); *Hathcock*, 471 Mich at 484 (reviewing application to a constitutional defense raised against a county's condemnation actions); *Hyde*, 426 Mich at 241 (stating that the retroactivity standard is the same as *Murray v Beyer Mem Hosp*, 409 Mich 217; 293 NW2d 341 (1980), which provided a right to plaintiffs who filed claims after the decision).

[52] *Stein*, 432 Mich at 201.

that had not yet been filed at the time of the new decision and allowed the beneficiary of a new right to assert it in cases filed after the relevant decision.

Although *Stein* and other Michigan caselaw contain language concerning when a case was "filed" in apparent reference to *Chevron Oil*, the standard method of retroactivity applies to cases arising from facts that occurred prior to the decision, especially given that there was no actual courtroom opportunity to raise the issue. A more precise reading of relevant caselaw is that the "usual" retroactive application in Michigan applies to: (1) the case before the court, (2) all cases that could have and did raise the issue that are pending at the time of the decision, and (3) all cases timely filed after the decision.[53] Michigan caselaw has described this standard as "limited retroactivity," but this phrase is an anachronism from the traditions of *Chevron Oil* and *Linkletter*. This phrase appears to be a comparison to complete retroactive application *on collateral review*. There is no doubt that the interests of finality and res judicata limit the retroactive applicability of new legal decisions after a final judgment.[54] Notably, as it has been developed and clarified by the

---

[53] See *id*. (applying to all cases "commenced after [the relevant case] was decided" and cases that are pending in which the issue was properly preserved) (quotation marks and citation omitted); *Hyde*, 426 Mich at 230, 240-241 (same); *Tebo v Havlik*, 418 Mich 350, 360; 343 NW2d 181 (1984) (opinion by BRICKLEY, J.) (describing "limited retroactivity" as applying to "the case before the Court and to pending and future cases"); *Bricker v Green*, 313 Mich 218, 236; 21 NW2d 105 (1946) (applying new rule to the case before it and to "pending and future cases"); *Murray*, 409 Mich at 221 (applying the new rule of law providing plaintiffs a right to recover damages against hospitals to cases pending and cases "started after" the decision).

[54] See *Rose*, 289 Mich App at 58 (citing the "[w]ell-settled policy considerations favoring finality of judgments"); *Pierson Sand & Gravel*, 460 Mich at 380 (" 'The doctrine of res judicata was judicially created in order to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." ' ") (citations omitted).

17

Supreme Court of the United States since *Chevron Oil* and *Linkletter*, the application of this Michigan standard is highly analogous to "full retroactivity" under federal caselaw.[55]

By contrast to full retroactivity, although there have been cases that appear to apply only to the parties that litigated the case as well as cases arising from events after the decision,[56] those cases and cases solely applying the judicial decision to claims arising from events after the decision are accurately described as decisions with "prospective effect" or "full prospective effect."[57]

In all, the term "limited retroactive effect" is an artifact from prior federal caselaw that has been subsequently clarified and refined. "Limited retroactive effect" in Michigan law is more accurately termed "full retroactive effect." The doctrine simply does not apply the relevant decision to cases where the parties have been given an opportunity to litigate in prior proceedings or to cases that are already final. Traditional procedural standards

---

[55] See *James B Beam Distilling*, 501 US at 535 (opinion by Souter, J.); *Harper*, 509 US at 97 (citing *James B Beam Distilling* and explaining that full retroactivity includes application of a rule "to the parties before it" and "in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule").

[56] E.g., *Tebo*, 418 Mich at 364 (opinion by BRICKLEY, J.); *People v Sexton*, 458 Mich 43, 45, 55-56, 58-67; 580 NW2d 404 (1998).

[57] *Hyde*, 426 Mich at 240 (1986) (stating that such cases constitute "complete prospective application"); *Tebo*, 418 Mich at 364 (opinion by BRICKLEY, J.) (noting that the holding was "prospective application" and applying it to events that occurred after the decision); *Parker v Port Huron Hosp*, 361 Mich 1, 26-28; 105 NW2d 1 (1960) (applying "prospective[ly]" and to the parties involved in the appeal the new rule of law established by the case); *Sexton*, 458 Mich at 67 (applying *Chevron* indicating that a holding had "prospective application only," i.e., applying to events occurring after the date of the decision); *Pohutski*, 465 Mich at 696-698 (applying *Chevron* and concluding that the decision should have "prospective application only").

such as forfeiture[58] and res judicata apply.[59] It is compared to "prospective effect," which applies decisions only to cases arising from facts occurring after the relevant decision, with the possible exception of the parties involved in the rulemaking decision itself.[60]

---

[58] See, e.g., *Napier v Jacobs*, 429 Mich 222, 227; 414 NW2d 862 (1987) ("A general rule of trial practice is that failure to timely raise an issue waives review of that issue on appeal."); *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review."); *People v Cain*, 498 Mich 108, 115; 869 NW2d 829 (2015) ("[T]he contemporaneous-objection rule prevents a litigant from 'sandbagging' the court— remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.") (quotation marks and citation omitted); *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110; 888 NW2d 295 (2016) ("[A] ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue") (quotation marks and citation omitted).

[59] *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004) ("The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first."); see also MCR 2.612 (setting out the standards for motions for relief from judgment in the civil context); *Barrow v Pritchard*, 235 Mich App 478, 480-485; 597 NW2d 853 (1999) (stating that "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding" and holding that an ineffective-assistance legal ruling was binding on the defendant in later proceedings) (quotation marks and citation omitted).

[60] Further, Michigan courts continue to use the factors originally stated in *Linkletter* to determine whether a new rule of criminal law applies retroactively to final judgments on collateral review. See, e.g., *People v Maxson*, 482 Mich 385, 393; 759 NW2d 817 (2008) (stating that "Michigan law has regularly declined to apply new rules of criminal procedure to cases in which a defendant's conviction has become final" and applying the *Linkletter* factors to determine a decision's retroactive effect on collateral review). Our decisions should not be understood to affect that body of law. By contrast, the Supreme Court of the United States has replaced the *Linkletter* standard with the standard established under *Teague*, 489 US 288 at 307, 310 (plurality opinion by O'Connor, J.), as modified by *Edwards v Vannoy*, 593 US 255, 271-272; 141 S Ct 1547; 209 L Ed 2d 651 (2021), for retroactive application of new rules of criminal law on collateral review. Of course, as this

19

## 2. APPLICATION TO *RAFAELI*

This Court has repeatedly indicated, in no uncertain terms, that prospective application is disfavored and that "the general rule is that judicial decisions are to be given complete retroactive effect."[61] Previous iterations of the Court have also noted "serious questions" about the constitutional legitimacy of issuing decisions without effect in factual circumstances for which the decisions control and applying the correct law only for specialized categories of individuals.[62] Specifically, prospective application is reserved primarily for situations where the Court overturns clearly established caselaw.[63]

---

Court has done in the past, the Court can apply a criminal law decision purely prospectively, like any other decision. See, e.g., *Sexton*, 458 Mich at 61, 67.

[61] *Hyde*, 426 Mich at 240; see also, e.g., *Pohutski*, 465 Mich at 695 (stating that "the general rule is that judicial decisions are given full retroactive effect"); *Devillers*, 473 Mich at 586 (noting that retroactive effect is the "usual rule" and that prospective application is reserved for "exigent circumstances"). This full retroactivity standard, which does not apply to cases that are already final, does not disrupt the established standards for retroactive application on collateral review in the criminal context, which is a distinct analysis. See note 60 of this opinion.

[62] *Hathcock*, 471 Mich at 485 n 98 (discussing these concerns with full prospective effect); *Devillers*, 473 Mich at 587 n 57 (same); see also *Griffith v Kentucky*, 479 US 314, 322-323; 107 S Ct 708; 93 L Ed 2d 649 (1987) (explaining, in the context of cases not yet final, the stare decisis value in applying a rule to "all similar cases" and the value in equality, which is implicated by applying an entirely different standard of law to "similarly situated" individuals) (quotation marks and citation omitted).

[63] See *Sexton*, 458 Mich at 63-64 ("Judicial decisions are generally given complete retroactive effect unless the decisions are unexpected or indefensible."); *Devillers*, 473 Mich at 586 ("This case presents no exigent circumstances of the sort warranting the extreme measure of prospective-only application.") (quotation marks and citation omitted); *Pohutski*, 465 Mich at 696 ("For example, a holding that overrules settled precedent may properly be limited to prospective application."); *Hyde*, 426 Mich at 240 ("Complete prospective application has generally been limited to decisions which overrule clear and uncontradicted case law."), citing *Tebo*, 418 Mich at 360-361 (opinion by BRICKLEY, J.).

Respecting traditional standards of procedure and the interest of finality, *Rafaeli* is the rule of the law in Michigan that governs constitutional takings; it applies to all those who have been denied the surplus proceeds that remain after their property has been seized and sold as a result of tax foreclosure. There is no basis for this Court to decline application of *Rafaeli* to cases that are not yet final or to timely filed claims premised on events that predated our decision in *Rafaeli*.[64] Therefore, *Rafaeli* has full retroactive effect.

It is basic and well-established law under the Michigan and United States Constitutions that governments cannot take private property without just compensation.[65] To determine whether a government action constitutes a seizure of "property," and therefore a taking, courts look to "existing rules or understandings that stem from an independent source such as state law."[66]

---

[64] By contrast, Kent County argues that either *Rafaeli* does not apply to claims for surplus proceeds filed after the decision (or to other claims, such as those that are final), or that the decision applies only prospectively except as to the named plaintiffs in *Rafaeli*. The state of Michigan, which is also an FGU, has taken the position that *Rafaeli* applies only prospectively except for the named plaintiffs in that decision. See, e.g., the state of Michigan's Application for Leave to Appeal in Docket No. 165219 (January 12, 2023), pp 22-42.

[65] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 184; 521 NW2d 499 (1994) ("[I]t can never be lawful to compel any man to give up his property, when it is not needed, or to lose it, whether needed or not, without being made whole.") (quotation marks and citation omitted); *Pennsylvania Coal Co v Mahon*, 260 US 393, 415; 43 S Ct 158; 67 L Ed 322 (1922) ("The protection of private property in the Fifth Amendment presupposes that it is wanted for public use, but provides that it shall not be taken for such use without compensation.").

[66] *Phillips v Washington Legal Foundation*, 524 US 156, 164; 118 S Ct 1925; 141 L Ed 2d 174 (1998) (quotation marks and citation omitted); *In re Certified Question*, 447 Mich 765, 788; 527 NW2d 468 (1994).

21

As we explained in *Rafaeli*, the property right to surplus proceeds dates back to the Magna Carta, through the English common-law tradition, through Michigan's early statehood, and into twentieth century Michigan and American jurisprudence.[67] "[A] property owner's right to collect the surplus proceeds from the tax-foreclosure sale of his or her property has deep roots in Michigan common law."[68] "Because this common-law property right is constitutionally protected by our state's Takings Clause," no subsequent amendment of the GPTA can abrogate this basic right.[69] As *Rafaeli* demonstrated, few rights and legal principles have greater legal, historical, and constitutional pedigrees than the protection against uncompensated takings, which applies fully to the taking of surplus proceeds following a tax-foreclosure sale.

The Supreme Court of the United States recently came to the same conclusion under the United States Constitution in *Tyler v Hennepin Co*.[70] In that case, the Supreme Court held that the Takings Clause of the United States Constitution prohibited the state of Minnesota from retaining surplus proceeds after a tax foreclosure without providing any opportunity for divested property owners to claim those proceeds.[71] The *Tyler* Court, like this Court in *Rafaeli*, cited extensive historical support and thoroughly explained that a property right to surplus proceeds exists and is protected under Takings Clause

---

[67] *Rafaeli*, 505 Mich at 456-473.

[68] *Id*. at 471.

[69] *Id*. at 473.

[70] *Tyler v Hennepin Co, Minnesota*, 598 US 631; 143 S Ct 1369; 215 L Ed 2d 564 (2023).

[71] *Id*. at 637-648.

jurisprudence. As this Court recognized in *Rafaeli*, this right dates back centuries to the very foundations of the Anglo-American legal tradition.[72]

Michigan authorities in recent decades retained surplus proceeds pursuant to statutes enacted by the Michigan Legislature. As this Court held in *Rafaeli*, this was unlawful and never should have been authorized by the Legislature.

Despite the robust history protecting individuals from government taking of surplus proceeds and without any authority to the contrary, the Michigan Legislature established procedures permitting the transfer of absolute title to FGUs and the subsequent retention of surplus proceeds in tax-foreclosure sales under a revised version of the GPTA in 1999.[73] Soon after these new procedures were adopted, litigation followed based on several legal theories, some of which were ultimately successful.[74] By 2020, this Court held the practice to be an unconstitutional taking.[75] The United States Court of Appeals for the Sixth Circuit followed in 2022,[76] and by 2023, the Supreme Court of the United States unanimously

---

[72] *Id*. at 639 ("The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymede in 1215, where King John swore in [the] Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.' ") (citation omitted).

[73] See 1999 PA 123; *Rafaeli*, 505 Mich 441-448 (describing the process in detail).

[74] For instance, the plaintiffs in *Rafaeli* asserted in the Court of Appeals that the GPTA violated due process. That claim was unsuccessful. *Rafaeli, LLC v Oakland Co*, unpublished per curiam opinion of the Court of Appeals, issued October 24, 2017 (Docket No. 330696), pp 2-5

[75] *Rafaeli*, 505 Mich 429.

[76] *Hall v Meisner*, 51 F4th 185, 188, 196 (CA 6, 2022).

declared the practice unconstitutional.[77]   None of these courts and their decisions overturned any caselaw, legal principles, or precedents in the process.  Instead, these courts simply applied undisputed takings law to a long-established property right to surplus proceeds.  There was no existing caselaw at the time Michigan FGUs began foreclosing property and retaining surplus proceeds that approved the constitutionality of those actions under the Takings Clauses of either the Michigan or the United States Constitutions.  While there may not have been caselaw expressly holding it to be unconstitutional, a direct application of recognized law demonstrated that the actions were not permitted.  Judicial decisions generally decide only the case or question before the court.[78]  Therefore, simply because a government practice is not taken at scale or lacked sufficient litigation to produce an on-point opinion declaring its illegality outright, at least for a certain period of time, does not negate the fundamental principles of law recognizing the illegality of the practice.[79]

Many FGUs administering tax-foreclosure sales, including defendants assuming as this Court must that the complaint's allegations are true,[80] deprived individuals of their

---

[77] *Tyler*, 598 US at 637-646.

[78] *Johnson v Muskegon Hts*, 330 Mich 631, 633; 48 NW2d 194 (1951) ("Courts ordinarily will not decide a case or question, in or on which there is no real controversy."); see also *People v Cain*, 498 Mich 108, 117 n 4; 869 NW2d 829 (2015) (explaining that courts generally "will not reach constitutional issues that are not necessary to resolve a case") (quotation marks and citation omitted).

[79] The Court need not lay out examples, which themselves could amount to an advisory opinion.  It suffices to note that the lack of court opinions in Michigan expressly stating a practice was unconstitutional does not then mean that the legality of the practice was supported by established law and precedent.

[80] *Maiden*, 461 Mich at 119.

constitutional rights to just compensation from government taking of private property. As a result, individuals such as plaintiffs in this case and *Rafaeli* unconstitutionally bore the cost of local government operations. Requiring just compensation for public use of private property is a basic right lying at the heart of rule-bound government in Michigan and the United States more broadly.[81]

We are not without sympathy to the fact that local FGUs were merely exercising the authority granted to them by the GPTA when enforcing tax foreclosures and retaining surplus proceeds. The GPTA clearly gave the FGUs the right to keep and utilize these proceeds for government use, and local governments undoubtedly engage in vital operations with limited budgets.[82] The FGUs balanced budgets by including the proceeds from tax-foreclosure sales then authorized by the GPTA. Nonetheless, while the problem originated with the Legislature, at the foundation of our government is the precept that no state officer or local government can justify a constitutional violation on the basis of a statutory directive.[83] Simply because the FGUs complied with the GPTA in the process of

---

[81] *Rafaeli*, 505 Mich at 462 ("Property and law are born and must die together.") (quotation marks and citation omitted); *Armstrong v United States*, 364 US 40, 49; 80 S Ct 1563; 4 L Ed 2d 1554 (1960) (explaining that the prohibition on takings "without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole").

[82] Local governments are generally required by law to have balanced budgets. See MCL 141.436(7); MCL 141.437(2).

[83] See, e.g., *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 704; 983 NW2d 855 (2022) ("The state is prohibited from violating the rights the Constitution guarantees."); Const 1963, art 11, § 1 (requiring an oath by all public officers that they will support and comply with "the constitution of this state"); see also 42 USC 1983 (explaining that individuals can obtain relief for violating the United States Constitution when the violation occurs "under color of any [state] statute"); *Green v Mansour*, 474 US 64, 68; 106 S Ct 423; 88 L Ed 2d 371 (1985) (explaining that under *Ex parte Young*, 209 US 123; 28 S Ct

25

violating the Michigan and United States Constitutions does not entitle those governments to limit *Rafaeli* to only prospective application, thereby potentially placing the costs of unconstitutional conduct on the very individuals whose rights were violated.

Further, the relief sought by Kent County and other FGUs seeking to prohibit retroactive application of *Rafaeli* would not only be ineffective, but actively counterproductive for the proper administration of justice. Defendants appear under the impression that by applying *Rafaeli* prospectively, they can defeat plaintiffs' claims for surplus proceeds. Not so. The question of prospective or retroactive application concerns *what law applies* not whether per se *a case is dismissed*.[84]

If *Rafaeli* were to only apply prospectively, that would mean that the decision and analysis in *Rafaeli* could not be cited as legal support and the law existing "prior to *Rafaeli*" would govern. Yet, as explained in *Rafaeli* itself and in *Tyler* by the Supreme Court of the United States, a centuries-long line of jurisprudence recognizes a property owner's right to surplus proceeds, and governments cannot take property without just compensation. Without on-point guidance from *Rafaeli*, parties and lower courts would be tasked with determining what the law is. Lower courts would be required to piece together the

_____

441; 52 L Ed 714 (1908), individuals can "challeng[e] the constitutionality of a state official's action in enforcing state law" without violating principles of sovereign immunity).

[84] See, e.g., *Pohutski*, 465 Mich at 698 (applying a decision prospectively, thereby for unaffected cases "the *interpretation* set forth in [a prior decision] will apply") (emphasis added); *Tebo*, 418 Mich at 364 (opinion by BRICKLEY, J.) (explaining that for those cases not affected by a prospective decision, "the law will simply remain as it was"); see also *James B Beam Distilling*, 501 US at 535 (opinion by Souter, J.) (analogizing the analysis to "choice of law").

26

reasoning already provided in *Rafaeli* to determine the legality of the takings.  In essence, lower courts would need to reconstruct and potentially rewrite the ultimate and correct reasoning of *Rafaeli*, without actually relying on our decision.  In *Rafaeli*, we provided consistency on an issue of major statewide significance; it firmly resolved any lingering doubt on the constitutionality of the government's practice of retaining surplus proceeds.  Recognizing the significant and decisive legal support for *Rafaeli*'s holding, applying *Rafaeli* prospectively would very likely only serve to delay an eventual adverse judgment against Kent County and other FGUs.  In the process, it would unnecessarily expend judicial resources, continue dispute and confusion in a significant area of law, and undermine the authority of this Court to provide a controlling decision of Michigan jurisprudence.[85]

In Michigan, the general rule is that judicial decisions are given full retroactive effect.[86]  Prospective application is disfavored, and it is reserved primarily for when clearly established caselaw is overturned.[87]  The context in this case is a far cry from that.  If anything, Kent County and other FGUs, although not malicious or nefarious actors, are asking the Court to *decline* application of clear and settled law that reaches back centuries.  Furthermore, prospective application has often been reserved for significant reversals in

---

[85] *People v Bullock*, 440 Mich 15, 27; 485 NW2d 866 (1992) ("This Court alone is the ultimate authority with regard to the meaning and application of Michigan law."); *People v Woolfolk*, 304 Mich App 450, 475; 848 NW2d 169 (2014) (comparing the role of the Court of Appeals, which is the state's "error-correcting court," with the role of the Michigan Supreme Court, which has the authority to "effect a significant change to Michigan law").

[86] See note 61 of this opinion.

[87] See notes 61 and 63 of this opinion.

27

the interpretation of statutory provisions or other non-constitutional holdings, and very

rarely if ever has it been used to deny relief for individuals whose constitutional rights have

been violated.[88]  Given that the Court in *Rafaeli* applied law that is understood and

recognized in centuries of legal practice and principle, retroactive application of that

decision is fully supported by this Court's precedents.[89]

That on its own justifies this Court's conclusion.  But moreover, *Rafaeli* was not

issued simply to reverse incorrect and problematic caselaw or to provide helpful,

nonconstitutional guidance for affected parties, like prior cases of prospective

---

[88] *Pohutski*, 465 Mich at 696 (reviewing statutory interpretation); *Tebo*, 418 Mich 350 (opinion by BRICKLEY, J) (interpretation of statute); *Sexton*, 458 Mich at 53, 60 (noting expressly that the claim was not reliant on the Michigan Constitution); see also *Hathcock*, 471 Mich at 484 (explaining that, even when reversing on-point precedent, a constitutional decision "returns our law to that which existed before [the prior decision] and which has been mandated by our Constitution since it took effect in 1963").

[89] See *Devillers*, 473 Mich at 587 (despite overturning on-point precedent, concluding that the decision constituted a "return to an earlier rule and a vindication of controlling legal authority," i.e., the plain language, and retroactive application was warranted); *Hathcock*, 471 Mich at 484 ("Our decision simply applies fundamental constitutional principles and enforces the 'public use' requirement as that phrase was used at the time our 1963 Constitution was ratified."); *Morris*, 460 Mich at 192 (1999) ("Therefore, [our earlier decision] simply reaffirmed the existing law, which was misinterpreted by the Court of Appeals."); *People v Doyle*, 451 Mich 93, 104; 545 NW2d 627 (1996) ("We did not change the law.  We gave effect to an unambiguous statute, implementing the intent of the Legislature.  Thus, the law was as we interpreted it to be, because of the nature of the unambiguous statutory language."); compare *Tebo*, 418 Mich at 361 (opinion by BRICKLEY, J.) ("Were [our earlier decision] a case of first impression in the Michigan courts, we would hold that the statutory language gave plaintiffs *no reason to believe* that the settlements entered into would comply with the 'retain' portion of the statute.") (emphasis added), with *Sexton*, 458 Mich at 65 (noting that the decision was a "complete break with past precedent" creating reliance interests, and it would require reeducation of police decisions previously made in "full compliance with the law").

28

application.[90]  Instead, this case involves governmental violation of the constitutional rights of numerous individuals.  Such profound interests weigh strongly against contrary interests advanced by Kent County and other FGUs in protecting government budgets as a result of their constitutional overreach.  Even considering the already heavy presumption against prospective application, this is not a case where the court is vitiating rights of claimants entitled to compensation for their injuries,[91] nor an instance in which the decision will substantially disrupt the functioning of previous legal adjudications.[92]  There is no injury for which the FGUs seek compensation, nor did *Rafaeli* affect the process and system of tax collection.  Constitutional takings require just compensation.  And retroactive application of *Rafaeli* merely requires returning money to landowners that was taken by counties although there was a longstanding constitutional bar on doing so.  The decision serves merely to place all parties back at the *status quo ante*, in a similar manner as restitution.[93]

Even if approved by the Legislature, the FGUs' actions here were not constitutional, and they were not judicially approved as being consistent with the Takings Clause of the Michigan Constitution.  By contrast, the governments ask this Court to decline thousands

---

[90] See *Pohutski*, 465 Mich at 696 (applying a correction of statutory interpretation prospectively); *Sexton*, 458 Mich at 53 (applying a judicially established prophylactic rule prospectively).

[91] *Devillers*, 473 Mich at 587 (permitting retroactive effect); *Tebo*, 418 Mich at 363-364 (opinion by BRICKLEY, J.) (declining retroactive effect).

[92] *Sexton*, 458 Mich at 67 (reversal of convictions).

[93] *Genesee Co Drain Comm'r v Genessee Co*, 504 Mich 410, 419; 934 NW2d 805 (2019) ("Restitution restores a party who yielded excessive and unjust benefits to his or her rightful position.").

if not millions of dollars of relief for surplus proceeds unlawfully taken from individuals, citing, in no small part, the fact that the very governments that applied unconstitutional policies could in retrospect suffer financial consequences. But the financial concerns of governments are those of the governments and taxpayers as a whole, not of the individuals who would otherwise be forced to shoulder the costs of the unconstitutional action, and not of the courts who vindicated those individual's constitutional rights.[94] Given that the effect

---

[94] Although not dispositive, to the extent government entities will be required to pay back the funds they unlawfully took from property owners, those entities would likely be required to do so under federal law *even if state law did not afford relief*. The Supreme Court of the United States held in *Tyler*, 598 US at 637-647, that a state government's seizure of surplus proceeds from a tax-foreclosure sale is an unconstitutional taking under the United States Constitution. Under federal law, claims "arising on facts antedating [a] decision" can be brought after the decision so long as the claims have not been reduced to final judgment, although such claims are subject to applicable statutes of limitations. *James B Beam Distilling*, 501 US at 532, 535 (opinion by Souter, J.); *Harper*, 509 US at 96-97 (adopting a rule that reflected the opinions of the majority of the justices in *James B Beam Distilling*); see, e.g., *Reynoldsville v Hyde*, 514 US 749, 756; 115 S Ct 1745; 131 L Ed 2d 820 (1995) ("Suppose a State collects taxes under a taxing statute that this Court later holds unconstitutional. Taxpayers then sue for a refund of the unconstitutionally collected taxes. Retroactive application of the Court's holding would seem to entitle the taxpayers to a refund of taxes."). Already, there are numerous cases currently proceeding in federal court advancing this very issue against Michigan counties via individual lawsuits and separate class actions. See, e.g., *Hall*, 51 F4th at 188, 196 (holding that a class action could continue against Oakland County); *Wayside Church v Van Buren Co*, unpublished order of the United States District Court for the Western District of Michigan, entered March 26, 2019 (Case No. 1:14-CV-1274) (reopening a case previously dismissed against Van Buren County); *Bowles v Sabree*, unpublished opinion and order of the United States District Court for the Eastern District of Michigan, issued January 14, 2022 (Case No. 20-12838) (holding that class action against Wayne County could proceed), aff'd in part, rev'd in part, and remanded on unrelated grounds in an unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued April 10, 2024 (Case No. 22-1912); *Pung v Isabella County*, 632 F Supp 3d 743 (ED Mich, 2022) (granting summary judgment in favor of a plaintiff against Isabella County). Recognizing the dispersed nature of the pending claims and the high expense of federal court litigation, application of *Rafaeli* retroactively, triggering the organized claims process under MCL 211.78t, may in fact *help*

of *Rafaeli* is to vindicate the constitutional rights of individuals against unlawful takings of property, the reliance interests the counties can cite, and the proper administration of justice to make property owners whole for legally unjustified takings, consideration of the *Chevron Oil* and *Linkletter* factors strongly weigh in favor of retroactive application.[95]

While respecting established procedural principles including forfeiture and finality, *Rafaeli* must be applied retroactively to timely filed cases not yet final at the time of the decision. Consequently, this Court affirms the judgment of the Court of Appeals and thereby the decision of the trial court to deny summary disposition on the basis of *Rafaeli*'s retroactivity. The case is remanded for further proceedings.

## B. *HATHON*

Plaintiffs in *Hathon*, who seek class certification for all individuals harmed from the retention of surplus proceeds when the state of Michigan operated as the FGU, claim that 2020 PA 256 applies prospectively. We disagree.

After *Rafaeli*, claimants could bring requests for relief against counties and local governments under an inverse-condemnation theory to recover surplus proceeds within a six-year statutory limitations period.[96] Claimants against the state, such as plaintiffs in

---

government entities in Michigan rather than harm them. Additional discussion of MCL 211.78t is provided later in the opinion.

[95] See *Pohutski*, 465 Mich at 696 (citing *Chevron Oil*).

[96] *Hart v Detroit*, 416 Mich 488; 331 NW2d 438 (1982); MCL 600.5813.

*Hathon*, could proceed only as permitted under established limitations and notice provisions applicable to actions in the Court of Claims.[97]

Under the interworking provisions of 2020 PA 256, the Legislature prohibited relief for plaintiffs harmed by takings that occurred prior to *Rafaeli* unless and until this Court exercised its discretion to take a case such as *Schafer* and hold that *Rafaeli* applies retroactively. Specifically MCL 211.78t, enacted under 2020 PA 256, states that a claimant whose "foreclosed property transferred or sold . . . before July 18, 2020 [the date of *Rafaeli*]" may seek surplus proceeds "*only if* the Michigan supreme court orders that its decision in *Rafaeli* . . . applies retroactively."[98] If that necessary condition is satisfied, the claimant would then be required to proceed through a detailed and specialized process of notice, claims, information disclosure, and ultimately judicial resolution.[99] Notably, the Legislature expressly stated that this process and structure in the GPTA was the "exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under

---

[97] MCL 600.6431 (notice provision); MCL 600.6452 (limitations period); *Gleason v Dept of Transp*, 256 Mich App 1; 662 NW2d 822 (2003) (applying the limitations period in MCL 600.6452 to takings claims).

[98] MCL 211.78t(1)(b) (emphasis added).

[99] MCL 211.78t(1)(b)(*ii*), and (6) through (10). Specifically, the claimants must file a notice with the FGU. MCL 211.78t(1)(b)(*ii*) and (6). In return, the FGU provides the claimant certain notice and information. MCL 211.78t(6). The claimant must then file a motion in circuit court in which the "judgement of foreclosure was effective . . . ." *Id*. The parties are required to exchange certain disclosures and information, including for instance, the claimant's interest in the property and remaining surplus proceeds. MCL 211.78t(6) and (7). Judicial proceedings then resolve the claimant's requested relief for surplus proceeds. MCL 211.78t(8) through (10).

the laws of this state."[100] While purportedly foreclosing relief until a Michigan Supreme Court decision, 2020 PA 256 also created a new two-year period of limitations for claims for surplus proceeds under MCL 211.78*l* that runs from the date of the judgment of foreclosure.[101]

We now consider whether PA 256 is a statute that applies retroactively. "In determining whether a statute should be applied retroactively or prospectively only, the primary and overriding rule is that legislative intent governs."[102] "All other rules of construction and operation are subservient to this principle."[103]

Reviewing MCL 211.78t, the Court of Appeals concluded that the statute, which established a detailed process for administration of claims filed for surplus proceeds if *Rafaeli* was retroactive, itself was not retroactive. Instead, the Court of Appeals concluded that it applied prospectively to only those claimants who filed their claims after the statute was enacted.[104] This conclusion is incorrect. By the plain terms of the statute, MCL 211.78t applies retroactively to all claims that arise from tax-foreclosure sales prior to *Rafaeli*.

MCL 211.78t(1)(b)(*i*) explicitly allows litigation prior to *Rafaeli* to proceed "*only if*" the Michigan Supreme Court holds the decision to be retroactive. It also expressly

---

[100] MCL 211.78t(11).

[101] See note 15 of this opinion for the full text of the provision.

[102] *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001) (quotation marks, citation, and brackets omitted).

[103] *Id*. (quotation marks and citation omitted)

[104] *Breiner*, 344 Mich App at 408-411.

33

identifies the claims to which it applies as those deriving from "foreclosed property transferred or sold . . . *before*" a specific date prior to the enactment of the statute, i.e., the date *Rafaeli* was issued on July 18, 2020.[105] The statute establishes a specific and detailed process for administrating those claims if and when this condition triggering relief is met.[106] To hold that such a statute itself is prospective borders on misnomer. It is well accepted that "retroactively" means application of a law to "transactions or considerations already past."[107] All sales of property occurring prior to the date of *Rafaeli* occurred *definitionally* prior to the date of the statute; MCL 211.78t unambiguously applies to events and occurrences in the past.

This is not a case in which a statute establishes a new substantive rule, without specification or detail as to temporal effect or past events. In order to find retroactivity in such a case, courts would be required to infer it through implication and nonexpress language. But in cases of standard operation, "[s]tatutes and statutory amendments are presumed to operate prospectively."[108] For instance, a new statute of limitations that bars or limits the presentation of claims accruing prior to enactment of the new statute is

---

[105] MCL 211.78t(1)(b)(*i*) (emphasis added).

[106] MCL 211.78t(1)(b) and (6) through (10).

[107] See *Hughes v Judges' Retirement Bd*, 407 Mich 75; 282 NW2d 160 (1979); accord *Landgraf v USI Film Prod*, 511 US 244, 269; 114 S Ct 1483; 128 L Ed 2d 229 (1994); see also *Johnson v Pastoriza*, 491 Mich 417, 432; 818 NW2d 279 (2012) (holding that a statute applied "prospectively" when it applied "only to *injuries occurring*" after a statute's effective date) (emphasis added).

[108] *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155; 725 NW2d 56 (2006).

disfavored and is applied prospectively by default.[109]  However, as a default rule of statutory interpretation, it is subject to the additional qualification that the Legislature can require a statute to apply retroactively if unambiguous in terms and context.[110]  For example, the Supreme Court of the United States identified a statute that mandated restoration of captured property "not yet *definitively* condemned" in legal processes.[111]  The provision indicated that Congress intended to apply the statute retroactively to actions that occurred prior to enactment, so long as final judgments were not disturbed.[112]

Here, MCL 211.78t creates a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds.  By its very terms, MCL 211.78t(1)(b) applies to and bars claims that were based on foreclosures sold

---

[109] *Id*. (applying it to a statute that required "good cause" for the filing); *Velsicol Chem Corp v Enenco, Inc*, 9 F3d 524, 528-530 (CA 6, 1993) (concluding that the application of a new statute of limitations, even when there still remained time to file for the plaintiff at issue, was inappropriate); *Bowen v Georgetown Univ Hosp*, 488 US 204, 208; 109 S Ct 468; 102 L Ed 2d 493 (1988) (application of regulation that allowed an agency to seek reimbursement for actions completed years prior was retroactive and not supported by statutory text) (quotation marks and citations omitted; emphasis added).

[110] *Davis*, 272 Mich App at 155-156 ("The Legislature's expression of an intent to have a statute apply retroactively must be clear, direct, and unequivocal as appears from the context of the statute itself.").

[111] *Landgraf*, 511 US at 273-274 (quotation marks omitted), quoting *United States v Schooner Peggy*, 5 US (1 Cranch) 103 (1801) (Marshall, C.J.).

[112] *Landgraf*, 511 US at 273-274 (quotation marks omitted), quoting *United States v Schooner Peggy*, 5 US (1 Cranch) 103 (1801) (Marshall, C.J.); *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26, 39-42; 852 NW2d 78 (2014) (holding that language stating "notwithstanding any agreement" and applying the act to "existing agreements" separately established retroactivity); Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul:Thomson/West, 2012), p 261 ("[S]tatutes will not be interpreted to apply to past events.").

"before July 18, 2020." The statute expressly identifies a date certain and specifically states that certain legal rights can be pursued, while others cannot. Further, the statute was enacted after *Rafaeli*; it must by its plain terms apply retroactively to events and occurrences that predated enactment.

Furthermore, there is nothing in the language, structure, or plain meaning of this statute that indicates claims that arose "before July 18, 2020," are treated in any different manner under the statute simply due to the happenstance of whether a lawsuit was filed at the time of *Rafaeli* (as opposed to the events underlying the suits), as the Court of Appeals concluded.[113] The statute asserts unambiguously that claims regarding sales occurring prior to *Rafaeli* "must" comply with the statute, including certain notice requirements and procedures if *Rafaeli* is ever applied retroactively.[114] No condition or limitation on this mandate is found in the language of the statute. It also is significant that the statute recognizes *Rafaeli* could be applied retroactively, and in that case, claimants must seek recoupment through a designated system established under MCL 211.78t. Yet under the Court of Appeals' analysis, a significant number of claimants who are expressly governed by the statute would fall wholly outside the scope of it and would not be governed by the procedures expressly established for obtaining compensation in the case of surplus seizure, solely based on the timing of legal representation and litigation. In the absence of

---

[113] *Breiner*, 344 Mich App at 408-411.

[114] MCL 211.78t(b)(1)(*i*) and (*ii*).

unambiguous textual support, the creation of inconsistent and incomplete application would conflict with the statutory system the Legislature established.[115]

Although MCL 211.78t is retroactive under its plain text, significant issues surrounding the retroactivity of relevant provisions of 2020 PA 256 remain. Prior to the enactment of 2020 PA 256, the statute of limitations to seek surplus proceeds as an unconstitutional taking was six years against county governments and three years against the state, with an additional one-year notice-of-intent requirement for claims against the state.[116] By barring relief until *Rafaeli* is held retroactive but not providing any provision to extend expiring claims, MCL 211.78t may cut off the natural running of limitations periods for claimants whose claims expired between the enactment of MCL 211.78t and this Court's decision in *Schafer*. Yet it is basic and well understood that due process prohibits amended statutes of limitations from retroactively extinguishing claims that were not yet time-barred and otherwise valid.[117]

---

[115] See, e.g., *Northwest Airlines, Inc v Transport Workers Union of America, AFL-CIO*, 451 US 77, 97; 101 S Ct 1571; 67 L Ed 2d 750 (1981) ("The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs."); accord *Gardner v Wood*, 429 Mich 290, 304; 414 NW2d 706 (1987) (in the context of reviewing statutory provisions and permitted relief, warning against an interpretation "where a balance struck by a comprehensive regulatory scheme could be undermined").

[116] *Hart*, 416 Mich at 496-497, 501-503; MCL 600.5813 (six-year limitations period for unspecified personal actions); MCL 600.6431 (one-year notice of intent required to sue the state); MCL 600.6452 (3-year limitations period for claims against the state).

[117] See *Block v North Dakota ex rel Bd of Univ & School Lands*, 461 US 273, 286 n 23; 103 S Ct 1811; 75 L Ed 2d 840 (1983) ("The Constitution, however, requires that statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.") (quotation marks and citations omitted) (collecting sources back to the 19th century); accord *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 403; 738 NW2d 664 (2007) ("[A] legislature may not 'take away an

At the same time, 2020 PA 256 amended MCL 211.78*l* to provide a new two-year statute of limitations for all claims for surplus proceeds. By contrast to MCL 211.78t, MCL 211.78*l* includes no similar language expressly identifying and applying its standard to actions and events prior to enactment. Statutes are generally presumed to apply prospectively, and statutes of limitations specifically have long been presumed to apply prospectively absent "clear and unequivocal manifestation of a legislative preference for retroactive application."[118] Moreover, if MCL 211.78*l* applied retroactively, it would cut off the rights of numerous individuals whose claims accrued prior to the creation of a shortened two-year limitations period. Statutes cannot constitutionally eliminate relief by retroactively shortening a period of limitations without also providing a reasonable period of time for claimants to commence litigation.[119] To avoid interpreting a statutory provision in a manner that would place it in serious constitutional jeopardy, and correspondingly in

---

existing right of action, by a statute of limitations which allows no time in which to bring suit after the statute has come into operation.' "), quoting *Price v Hopkin*, 13 Mich 318, 324 (1865); *Ockerman v May Zima & Co*, 27 F3d 1151, 1157 (CA 6, 1994) ("Congress is without authority to extinguish claims by shortening the statute of limitations unless the prior limitations period has not yet expired and Congress provides a reasonable time in which the plaintiff may file suit.") (collecting sources).

[118] *Davis*, 272 Mich App at 161 (citing "100 years of jurisprudence" in Michigan); *Rzadkowolski v Pefley*, 237 Mich App 405, 411; 603 NW2d 646 (1999) ("Stated otherwise, the applicable statute of limitations is the one in effect when the plaintiff's cause of action arose."); see also MCL 600.5869 ("All actions and rights shall be governed and determined according to the law under which the right accrued, in respect to the limitations of such actions or right of entry.").

[119] See note 117 of this opinion.

line with its plain text and established methods of statutory interpretation, the proper reading of MCL 211.78*l* is to apply the new two-year statute of limitations prospectively.[120]

MCL 211.78t applies retroactively. MCL 211.78*l* applies prospectively. However, MCL 211.78t cannot work together with statutes of limitations applicable to claims accruing prior to the enactment of 2020 PA 256 to retroactively cut off relief for claims that expired between the date of the enactment of MCL 211.78t on December 22, 2020, and the date of this Court's decision in *Schafer*. Therefore, courts must provide individuals whose claims were cut short by operation of MCL 211.78t a "reasonable time" by which they may file their claims after the Court's decision in *Schafer*, respecting the established limitations period existing at the time the claims accrued.[121] Generally, when the Legislature enacts an express savings period by which a new statute permits claimants to file previously accruing claims, courts defer to this choice of a "reasonable time."[122]

---

[120] See *Sole v Mich Economic Dev Corp*, 509 Mich 406, 419; 983 NW2d 733 (2022) ("When the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.") (quotation marks and citations omitted); *Clark v Martinez*, 543 US 371, 381; 125 S Ct 716; 160 L Ed 2d 734 (2005) ("Indeed, one of the canon's chief justifications is that it allows courts to avoid the decision of constitutional questions. It is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts.") (emphasis omitted); see also notes 117 and 118 of this opinion.

[121] *Block*, 461 US at 286 n 23 (quotation marks and citations omitted); *Trentadue*, 478 Mich at 403.

[122] *Price v Hopkins*, 13 Mich at 324 ("The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment and where the Legislature has fairly exercised its discretion, no Court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised."); *Wilson v Iseminger*, 185 US 55, 62-63; 22 S Ct 573; 46 L Ed 804 (1902) ("It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon

However, without any savings clause provided by the Legislature in this context, we hold that claimants whose claims were cut short by the retroactive application of 2020 PA 256 will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under the applicable statutes of limitations on December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion.[123]

There are several reasons why this is the appropriate remedy. First, the standard falls well in line with accepted methods of calculating a "reasonable time," which include providing litigants "the balance of the time unexpired according to the law as it stood when the amending act was passed, provided that it shall never exceed the time allowed by the new statute."[124] Second, in this case, 2020 PA 256 does not amend or alter the statute of

existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice."); see, e.g., *Krone v Krone*, 37 Mich 308, 309 (1877) (holding that an express one-year savings clause was reasonable).

[123] By way of example, if on December 22, 2020, a claimant had one year remaining on a six-year statute of limitation for a claim against a county government, the statute of limitations would not bar the claim if the claim were filed within a year of this opinion. If two years remained on December 22, 2020, the statute of limitations would not bar a claim filed within two years of this opinion. However, of significant note, MCL 211.78t applies to all such claims and restricts the time by which a notice of intent to collect surplus proceeds can be filed after the date of this opinion, as discussed below. Our holding does not revive claims that were not subject to pending litigation and were already time-barred before December 22, 2020.

[124] *Brown v Angelone*, 150 F3d 370, 375 (CA 4, 1998) (quotation marks, citations, and brackets omitted) (collecting sources and explaining it is the method often "traditional[ly]" used); *Spaulding v RJ Reynolds Tobacco Co*, 93 NC App 770, 772-773; 379 SE2d 49 (1989), quoting *Culbreth v Downing*, 121 NC 205 (1897), (applying the same reasonable-time standard); *Perlstein v Wolk*, 218 Ill 2d 448, 470; 844 NE2d 923 (2006) (determining "reasonable time" on a case-by-case basis and concluding that the balance of remaining time was the reasonable and appropriate standard in the case at hand) (quotation marks omitted); see also 49 ALR 1263, *Reasonableness of Period Allowed for Existing Causes of*

limitations for claims accruing prior to its enactment. Therefore, the remedy of providing to claimants the balance of their time would vindicate the express text and choice of the Legislature to provide claimants a full six- and three-year period, with an added one-year notice-of-intent period for claims against the state, to obtain relief for unconstitutional takings.[125] Finally, the Legislature in enacting 2020 PA 256, applied MCL 211.78t retroactively. In so doing, the Legislature instituted express deadlines by which claimants must file notices of intent to collect surplus proceeds. The statute provides that claimants must file their notice "by the [next] March 31 [of any year] at least 180 days after any qualified order," i.e., this Court's decision in *Schafer*.[126] Thus, while some claimants may not be barred under applicable statutes of limitation from bringing claims for a given period, MCL 211.78t establishes a controlled and limited time window by which claimants may file their notice of intent to claim surplus proceeds. Any concern of providing extended limitations periods, beyond that which is necessary to provide a "reasonable time" to file a claim, is substantially mitigated by the statutory context at issue in this case. In all, the remedy of providing claimants the balance of their time that existed on December 22, 2020, running from the date of today's decision, applies a clear and accepted standard, guarantees the constitutional rights of claimants, and respects the statutory

---

*Action by Statute Reducing Period of Limitation* (2024) (explaining that the standard derives from the North Carolina Supreme Court and is one of the primary defined standards to determine "reasonable time").

[125] MCL 600.5813 (six-year limitations period); MCL 600.6431 (requirement to file notice of intent to sue state within one year of claim accruing); MCL 600.6452 (three-year limitations period for claims against the state).

[126] MCL 211.78t(6).

choices of the Legislature in administering claims for the unconstitutional taking of surplus proceeds.

Having concluded that *Rafaeli* applies retroactively to claims not yet final at the time of the decision, that MCL 211.78t applies retroactively, and that MCL 211.78*l* applies prospectively and thus only to claims accruing after the enactment of 2020 PA 256, the Court vacates the decision of the Court of Appeals to affirm recertification of plaintiffs' class. The Court also vacates Parts III(A) and (B) of the Court of Appeals' opinion. Finally, the Court remands this case to the Court of Claims to reconsider plaintiffs' motion to recertify the class in light of this Court's decisions in the first instance.

## IV. CONCLUSION

We hold that *Rafaeli* applies retroactively to claims not yet final at the time of the decision. In addition, we conclude that MCL 211.78t, enacted under 2020 PA 256, applies retroactively to claims arising prior to its enactment. However, MCL 211.78*l*, establishing a new limitations period for claims for surplus proceeds under 2020 PA 256, applies only prospectively to claims arising from tax-foreclosure sales that occurred after the date of 2020 PA 256's enactment. Further, MCL 211.78t in conjunction with applicable statutes of limitations cannot constitutionally apply retroactively to cut off claims for relief. Therefore, if filed within a "reasonable time" of today's decision, claims that arose prior to the date of 2020 PA 256's enactment but expired between the date of enactment and the date of today's decision must proceed, while still respecting the applicable statutes of limitation. Specifically, claims may be filed under the applicable statutes of limitations if

42

done within the balance of time remaining to file the claims on December 22, 2020, running from the date of this opinion.

Consequently, in *Schafer*, the Court of Appeals' decision to affirm denial of Kent County's summary-disposition motion is affirmed, and the case is remanded for further proceedings. In *Hathon*, the decision of the Court of Appeals to affirm recertification of plaintiffs' class, as well as Parts III(A) and (B) of the Court of Appeals opinion, are vacated. The Court remands the case in *Hathon* to the Court of Claims for reconsideration of plaintiffs' motion for recertification in light of the Court's decisions.

Brian K. Zahra
Elizabeth T. Clement
David F. Viviano (except as to
      Part III(A))
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

MATTHEW SCHAFER, HARRY
HUCKLEBURY, and LILLY
HUCKLEBURY,

        Plaintiffs-Appellees,

v                                 No. 164975

KENT COUNTY,

        Defendant-Appellant,

and

KENT COUNTY TREASURER,

        Defendant.

_____

LYNETTE HATHON and AMY JO
DENKINS, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs-Appellees,

v                                 No. 165219

STATE OF MICHIGAN,

        Defendant-Appellant.

_____

ZAHRA, J. (*concurring*).

As stated in the majority opinion, the Legislature passed 2020 PA 256 with immediate effect mere months after this Court's decision in *Rafaeli*.[1] The law: (1) prohibited relief for individuals who had their surplus proceeds unconstitutionally taken without just compensation prior to this Court's decision in *Rafaeli*, (2) conditioned access to such relief upon this Court taking a case on appeal and holding that *Rafaeli* applied retroactively,[2] and (3) stated that its provisions were the sole and "exclusive" means by which individuals could seek compensation for their unlawfully taken surplus proceeds.[3] Furthermore, despite prohibiting individuals from bringing claims unless and until this Court holds that *Rafaeli* applied retroactively, 2020 PA 256 failed to provide any savings clause for claims that were extinguished through the expiration of statutory periods of limitations from the date of 2020 PA 256's enactment until the date of this Court's decision in *Schafer*.

The Legislature's enactment of 2020 PA 256, following in the wake of this Court's constitutional holding in *Rafaeli*, is alarming and unusual.[4] A coequal branch of government

_____

[1] *Rafaeli, LLC v Oakland Co*, 505 Mich 429; 952 NW2d 434 (2020).

[2] MCL 211.78t(1)(b)(*i*) (stating that claims based on property foreclosed "before July 18, 2020," the day after *Rafaeli* was issued, can be brought "only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively").

[3] MCL 211.78t(11).

[4] In recent years, the Legislature has passed statutes that condition establishment of designated processes on a future judicial decision being made. For instance, under MCL 769.25a, the Legislature established a process of notification and prosecutorial motions to resentence defendants if *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), addressing youth life sentences, was held retroactive by the Michigan Supreme Court or the Supreme Court of the United States. Similarly, MCL 423.210 of Michigan's public employment relations act, MCL 423.201 *et seq*., allows public unions to require financial contribution to the union as a condition of being employed under a collective bargaining agreement, but only if the Supreme Court of the United States "reverses or limits" workers' First Amendment right to not be subject

2

cannot leverage the availability of constitutional relief for aggrieved parties on this Court's acceptance of an application for leave to appeal and resolution of a case on the merits; such action is inherently a judicial function.[5] If this Court did not grant leave to consider *Schafer*, individuals around the state may have been denied a remedy for violations of basic constitutional

---

to those mandates. See MCL 423.210(5), citing *Janus v AFSCME, Council 31*, 585 US 878; 138 S Ct 2448; 201 L Ed 2d 924 (2018). The central difference between these statutes and 2020 PA 256 is that 2020 PA 256, through MCL 211.78t, *totally foreclosed* relief under the Michigan Constitution until the Michigan Supreme Court exercised its inherently discretionary authority to take a case and hold that *Rafaeli* applies retroactively. By contrast, there is no indication in law or precedent that MCL 769.25a barred criminal defendants from bringing motions for relief from judgment and obtaining relief prior to the relevant judicial decision. See MCR 6.502. And MCL 423.210 governed only if certain constitutional rights were abrogated. It would be deeply concerning for a statute to prohibit an individual from exercising his First Amendment or due-process rights for a material length of time, conditioned on a discretionary act unrelated to the substance of the right. Similarly, it is highly alarming that the Legislature prohibited constitutional claims for surplus proceeds until this Court accepted an appeal and issued a specific holding. Over three years have passed since 2020 PA 256 was enacted, and for over three years the statute has attempted to bar relief for individuals whose constitutional rights were violated.

[5] Const 1963, art 6, § 4 (stating that the Michigan Supreme Court exercises "general superintending control over all courts; power to issue, hear and determine prerogative and remedial writs; and appellate jurisdiction as provided by rules of the supreme court"); MCR 7.303 (stating that review from this Court is mandatory only when involving the Judicial Tenure Commission; all other appeals are "discretionary"); MCR 7.305(B) (stating the grounds that must be satisfied by the appellant to justify this Court exercising discretionary review); *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006) (noting the inherent judicial authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"); see also Const 1963, art 3, § 2 ("No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."); *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 305; 586 NW2d 894 (1998) ("[A]n indispensable ingredient of the concept of coequal branches of government is that each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.") (quotation marks and citations omitted).

rights, for which they were entitled to relief.[6]  At the very least, the attempt to close off relief in 2020 PA 256 pending discretionary action from this Court risked serious uncertainty, disruption, and expenditure of finite public resources in the adjudication of constitutional claims.[7]  Although we expeditiously granted *Schafer*'s application and now hold that *Rafaeli* is retroactive, the Legislature's method may not be fully vindicated.  Serious constitutional concerns surround this legislative tactic.[8]

Brian K. Zahra

---

[6] Under the plain language of the statute, which applied retroactively, these claimants were also denied a remedy for constitutional violations until *Schafer* was heard and ultimately decided.

[7] Moreover, by its plain language conditioning that "[a] claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli* . . . applies retroactively," the Legislature certainly also disrupted judicial efficiency by expressly leaving the lower courts powerless to determine the validity of claims unless and until we reached this holding.  MCL 211.78t(1)(b)(*i*).

[8] See note 5 of this opinion; see also *Mich Coalition of State Employee Unions v Civil Serv Comm*, 465 Mich 212, 219; 634 NW2d 692 (2001) ("It is beyond reasonable dispute that a trial court has the authority, and, in appropriate cases, the duty, to enter permanent injunctive relief against a constitutional violation.") (emphasis omitted); *Webster v Doe*, 486 US 592, 603; 108 S Ct 2047; 100 L Ed 2d 632 (1988) (explaining the need for "clear" statutory language to preclude judicial review of constitutional claims to avoid the "serious constitutional question" that would arise from such legislation) (quotation marks and citation omitted).

STATE OF MICHIGAN

SUPREME COURT

MATTHEW SCHAFER, HARRY
HUCKLEBURY, and LILLY
HUCKLEBURY,

        Plaintiffs-Appellees,

v                                        No. 164975

KENT COUNTY,

        Defendant-Appellant,

and

KENT COUNTY TREASURER,

        Defendant.

_____

LYNETTE HATHON and AMY JO
DENKINS, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiffs-Appellees,

v                                        No. 165219

STATE OF MICHIGAN,

        Defendant-Appellant.

_____

VIVIANO, J. (*concurring*).

      I join the majority opinion except for the portions of Part III(A) that discuss and rely

on the historical analysis of claims for surplus proceeds from *Rafaeli v Oakland Co*, 505

Mich 429, 456-473; 952 NW2d 434 (2020). The majority asserts that "the property right to surplus proceeds dates back to the Magna Carta, through the English common-law tradition, through Michigan's early statehood, and into twentieth century Michigan and American jurisprudence." *Ante* at 22. But as I have previously explained, neither the Magna Carta nor the earlier Michigan caselaw that the majority relied on in *Rafaeli* clearly indicated that surplus proceeds must be returned to a previous property owner after foreclosure. See *Rafaeli*, 505 Mich at 499-502 (VIVIANO, J., concurring), citing *People ex rel Seaman v Hammond*, 1 Doug 276 (Mich, 1844), and *Dean v Dep't of Natural Resources*, 399 Mich 84; 247 NW2d 876 (1976).

Instead, I continue to believe that for tax-foreclosure takings claims involving real property, "[t]he better view . . . is that the property taken is the taxpayer's equity and that this occurs when title vests in the government with no opportunity for redemption." *Rafaeli*, 505 Mich at 519 (VIVIANO, J., concurring). Recognizing the relevant property right as the taxpayer's equity interest in the real property is better grounded in the history of property law than the "freestanding right to proceeds" that the majority in *Rafaeli* recognized. *Id*. at 515.

Since *Rafaeli* was decided, developments in the federal courts have left uncertainty as to the correct property right at issue. The United States Court of Appeals for the Sixth Circuit held that a foreclosing governmental unit cannot take absolute title in a property to satisfy a tax debt less than the value of the property and then refuse to refund the former property owner any of the difference. See *Hall v Meisner*, 51 F4th 185, 187 (CA 6, 2022). The court there recognized that "[t]he return of that surplus compensates the debtor for her equitable interest in the property—which in common speech is called the 'equity' in real

2

property, and which English and American courts for centuries have called 'equitable title.' " *Id.* The Sixth Circuit's conclusion differed from that in *Tyler v Hennepin Co*, 26 F4th 789, 793-794 (CA 8, 2022), rev'd 598 US 631 (2023), in which the Eighth Circuit held that retention of surplus equity after a tax-foreclosure sale was not an unconstitutional taking.

The United States Supreme Court reversed the Eighth Circuit, resolving the question of whether a foreclosing governmental unit may retain surplus proceeds after a tax-foreclosure sale—it may not do so. *Tyler v Hennepin Co*, 598 US 631, 647; 143 S Ct 1369; 215 L Ed 2d 564 (2023). But there remain points of unclarity after *Tyler*. See generally Ponoroff, *The Curious Case of* Tyler v. Hennepin County, 43 Va Tax Rev 131 (2023) (explaining the numerous questions that remain after *Tyler* was decided).

First, *Tyler* did not clearly explain the basis for the property right at issue. The Court recognized that the Takings Clause itself does not define property and that the Court instead "draws on 'existing rules or understandings' about property rights." *Tyler*, 598 US at 638. One of the sources it looks to is state law, but like the Sixth Circuit, the Supreme Court recognized that " '[t]he Takings Clause would be a dead letter if a state could simply exclude from its definition of property any interest that the state wished to take.' " *Id.*, quoting *Hall*, 51 F4th at 190. For this reason, the Court explained that it must "look to 'traditional property law principles,' plus historical practice and [Supreme Court] precedents." *Tyler*, 598 US at 638, quoting *Phillips v Washington Legal Foundation*, 524 US 156, 165-168; 118 S Ct 1925; 141 L Ed 2d 174 (1998). But there is a difference between defining an existing property right out of existence, which appears to be what *Hall* was concerned about, and defining property prospectively. The Supreme Court did not

3

appear to recognize this distinction. Additionally, I question whether *Tyler*'s historical analysis was sufficiently thorough to correctly define the property right at issue. See *The Curious Case of Tyler*, 43 Va Tax Rev at 161 ("As the Supreme Court later would in *Tyler*, the majority in *Rafaeli* relied, *inter alia*, on Clause 26 of the Magna Carta, prohibiting the seizure of property in excess of the tax debt. However, the concurrence pointed out the impracticability of this rule as applied to real estate as opposed to personal property, suggesting Clause 26 may have little bearing on the seizure of real property.") (citations omitted).

Second, *Tyler* did not explain how the amount of surplus proceeds to be returned to the taxpayer must be calculated. *The Curious Case of* Tyler, 43 Va Tax Rev at 138. Should the surplus proceeds be calculated on the basis of the sale price of the property after the foreclosure or the market value of the property at the time of the foreclosure? See *id.*; see generally *Rafaeli*, 505 Mich at 520 n 85 (VIVIANO, J., concurring).

Third, *Tyler* did not explain what, if anything, the taxpayer is entitled to if there is no public sale and a governmental unit either retains or purchases the property, resulting in no surplus proceeds. See *The Curious Case of* Tyler, 43 Va Tax Rev at 138; see also *Rafaeli*, 505 Mich at 520-521 (VIVIANO, J., concurring) (discussing such a hypothetical scenario and leaving open "the possibility that 'just compensation' might require something greater than the surplus in a particular case, especially in cases in which the government purchased the property for the minimum bid").

The answers to these questions are beyond the scope of the cases before us today, but they are important questions that will eventually be addressed by the courts. And despite my disagreement with the majority's approach in *Rafaeli*, I agree with the majority

4

in *Schafer v Kent Co* that *Rafaeli* is properly given full retroactive effect. Michigan's General Property Tax Act, MCL 211.1 *et seq*., did not "abrogate[] the common-law right to equity"; rather, it "simply allocate[d] the surplus proceeds after the tax-foreclosure sale[.]" *Rafaeli*, 505 Mich at 515 (VIVIANO, J., concurring). The majority is correct that our "general rule is that judicial decisions are given full retroactive effect[.]" *Pohutski v City of Allen Park*, 465 Mich 675, 695; 641 NW2d 219 (2002). *Rafaeli* was not a new rule of law. The case did not depart from clear precedent, and although it decided an issue of first impression—under a statute that was enacted relatively recently when compared to the history and caselaw regarding equity in real estate—the result flowed from the application of fundamental constitutional principles and the law of property, as I explained in *Rafaeli*, 505 Mich at 502-511 (VIVIANO, J., concurring).[1]

For these reasons, I concur.

David F. Viviano

---

[1] See generally *People v Phillips*, 416 Mich 63, 67-68; 330 NW2d 366 (1982) (holding that an appellate decision did not establish a new rule of law given that it "neither announced a departure from clear precedent nor decided an issue of first impression whose resolution was not clearly foreshadowed" and that, therefore, the decision applied retroactively); *Wayne Co v Hathcock*, 471 Mich 445, 484; 684 NW2d 765 (2004) (holding that an appellate decision had retroactive effect where it applied "fundamental constitutional principles" and returned the law "to that which existed before" a decision being overruled).